LLOYD, RESPONDENT, *v.* BOARD OF COMMISSIONERS OF SILVER BOW COUNTY, APPELLANT.

[Submitted February 19, 1895.    Decided March 4, 1895.]

SHERIFFS—*Employment and compensation of jailer and guards.*—Under the statutes of Montana (Comp. Stat., div. 5, § 1270), the sheriff has the custody of the jail of his county and the prisoners therein. He is to keep the prisoners, and is personally liable for their escape, if it occurs, and under these circumstances section 1271, division 5, of the Compiled Statutes, gives to him the appointment of his jailer at the county's expense. He likewise has authority to employ, at the county's expense, the necessary guards to insure the safety of his prisoners.

SAME—*Same.*—Where the sheriff employs the necessary number of persons to guard his prisoners, and the county refuses to compensate them for their services, the sheriff may pay them himself, and recover the money which he has thus paid out from the county, for whose benefit he paid the money. (*Platner v. Madison County,* 5 Mont. 459, distinguished.)

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for money paid for the benefit of another. Judgment for plaintiff was rendered by PEMBERTON, J. Affirmed.

Statement of the case by the justice delivering the opinion:

This is an appeal by the board of county commissioners from a judgment in favor of plaintiff, the sheriff of that county, for money paid out for the services of a jailer and for a death watch for a prisoner under sentence of death. There was also an appeal from an order denying a new trial.

It appears from the record that the sheriff filed his account with the board of county commissioners, who disallowed the same. From this order of the board he appealed to the district court, where a judgment was rendered in his favor.

There are no technical pleadings in this case. The only pleading was the account of the plaintiff filed with the commissioners, and which was as follows:

"October 31st, 1889.

SILVER BOW COUNTY, M. T.,
   to
JOHN E. LLOYD,
    Sheriff of Silver Bow County, M. T., Dr.

Services of Thomas Richards, as jailer of Silver Bow county jail, M. T., from April 1st, 1889, to November 1st, 1889, at $100 per month, 7 months at $100 per month...............................................................$700

Services of J. B. Knight, as guardian over H. Roberts... 95
                   ————
                   $795"

One jailer had acted, and the county paid for his services for the period for which the charges were made by the sheriff for the services of Richards, who was a jailer in addition to the one paid by the commissioners. The necessity for the appointment of Richards as an additional jailer was proved upon the trial by overwhelming testimony. In fact there was no controversy in the district court upon that question, and the necessity is conceded by counsel upon the argument in this court. The same statement as to the necessity may be made in regard to the employment of Knight as death watch. The commissioners had appointed a person as death watch, and the only question between them and the sheriff was as to the person who should perform the duty. The sheriff would not allow the person whom the commissioners desired to select to act, holding

that he was not a suitable person for such service.  The sheriff selected Knight.

Therefore the commissioners would not pay the death watch selected by the sheriff; and, as to the jailer, they would not pay any one.

We note the following statutes as applicable to this controversy:

"SEC. 1269.   The county commissioners shall have the care of building, inspecting, and repairing such jail, and shall, once every three months, inquire into the state, as respects the security thereof, and the treatment and condition of prisoners, and shall take all necessary precaution against escape, sickness, or infection.

"SEC. 1270.   The sheriff shall have the custody of the jail in his county, and of the prisoners therein, and shall keep the same personally, or by his deputy, for whose debts he shall be responsible, and shall furnish, at the expense of the proper county, all necessary sustenance, bedding, clothing, fuel, and medical attendance for the prisoners committed to his custody.

"SEC. 1271.   The sheriff may appoint a jailer, who, in the absence or disability of the sheriff, shall have the custody of the jail and the prisoners."   (Comp. Stats., div. 5.)

*M. L. Wines,* and *Stephen De Wolfe,* for Appellant.

*F. T. McBride,* for Respondent.

DE WITT, J.—It appears that, by the statutes of the state, the sheriff has the custody of the jail of his county, and the prisoners therein.  (Comp. Stats., div. 5, § 1270.)  He is to keep the prisoners, and he is personally liable for their escape, if it occurs.  Under these circumstances the statute properly gives to the sheriff the appointment of his jailer.  In the case at bar the sheriff made such appointment.  The absolute necessity of the appointment of the second jailer, Richards, was proved, and is conceded.  The jail of that county was a busy place by day and by night, and as much so by night as by day.  It was simply impossible for one jailer to serve for the twenty-four hours of the day.  The necessity for the appointment of the death watch was as clearly proved.

In the case of *Platner* v. *Commissioners*, 5 Mont. 459, the sheriff was refused pay for a jailer, on the ground that no authority was shown for his appointment, and no necessity for his services. But here both the authority and the necessity appear. With this clearly proven necessity this case cannot be a precedent for allowing pay for such services on any fictitious or pretentious claim by a sheriff for allowance for such expenses.

No question is raised in this case as to the amount of compensation claimed by the sheriff. Therefore, authority being given for the appointment, and necessity being shown therefor, we cannot hesitate to say that the county is liable.

As to the death watch, the necessity appears as clearly, and, while there is nothing in the statute as to who shall select such person, we are of opinion that, under the statutory liability of the sheriff for the safety of his prisoners, the authority to select a death watch, for such purpose, must rest with the sheriff, and not with the commissioners. Therefore, the county is liable on both items of the account. Indeed, there is not much contention between counsel as to this branch of the case.

The substantial controversy, as made upon the argument, is whether Lloyd, the sheriff, has the right to sue for the money which he thus paid out. The appellants contend that, in the absence of any showing that Richards or Knight assigned their claims against the county to Lloyd, Lloyd is not the party in interest, and cannot maintain the action. But we are of opinion that an assignment to Lloyd was not required, and that this was money paid out by Lloyd for the county, for which the county was liable to Lloyd.

Richards and Knight knew that the county commissioners declined to pay them. It is a fair presumption, from the evidence, that men do not work without a compensation, or a contract therefor. Richards presented his claim to the county commissioners for the first month of his service, and for every month thereafter, and was refused payment. We think it was fairly in the evidence that he and Knight, under the circumstances, looked to Lloyd for their pay. Lloyd's situation was this: He, as sheriff, was under the official duty of caring for the jail and the prisoners. He was liable if he failed in his duty. He had power to appoint these men. The necessity

existed for their appointment (which necessity he determined, of course, at his peril). The men being appointed, they must be paid. If Lloyd was to get them he must pay them himself. He did get them, and he did pay them. Therefore Lloyd had to pay this money to obtain this necessary service. It is a case of money paid out by one for the benefit of another.

The only question left is whether it was so paid at the request of the other, express or implied. Of course it was not at the express request of the commissioners. Was the request implied?

It was said in 4 Wait's Actions and Defenses, page 453, as follows: "In order to entitle a person to recover money paid for another, a request, express or implied, must be established, or an express promise to pay it, and it may be said that, in all cases where there is a legal obligation on the part of the person paying to pay the money, the primary obligation resting upon the person for whose benefit it was paid, the law implies a request and a consequent promise that will uphold an action to recover it back." (See also cases cited.)

We quote the following from *Bailey* v. *Bussing*, 28 Conn. 461: "Let us look at some of the cases of assumpsit for money paid, and the principle settled by them. Generally it is sufficient if the money is paid for a reasonable cause, and not officiously. (*Brown* v. *Hodgson*, 4 Taunt. 189; *Skillin* v. *Merrill*, 16 Mass. 40; *Jefferys* v. *Gurr*, 2 Barn. & Adol. 833; *Pownal* v. *Ferrand*, 6 Barn. & C. 439; *Exall* v. *Pattridge*, 8 Term. Rep. 308; *Touissant* v. *Martinnant*, 2 Term. Rep. 100.) So where it has been paid to relieve a neighbor's goods from legal distraint in his absence (*Jenkins* v. *Tucker*, 1 H. Black. 90) for there was a legal duty resting on the defendant. So to defray the expenses of his wife's funeral, for there was a like duty. So to reimburse the expenses of bail for pursuing the principal and bringing him back and surrendering him into court. (*Fisher* v. *Fallows*, 5 Esp. 171.) So for getting the defendant's goods free, which had been distrained by the landlord for the defendant's debt, they being at the time on the tenant's premises. (*Exall* v. *Pattridge, supra.*) Or for money paid to indemnify the owner for the loss of his

goods, which the plaintiff, an auctioneer, had, by mistake, delivered to the defendant, who had appropriated them to his own use (*Brown* v. *Hodgson, supra*); though of this case Lord Ellenborough, in *Sills* v. *Laing*, 4 Camp. 81, said that he thought the action should have been special, but the right of action he did not question. So where money has been paid by a surety, or by one of several joint debtors. (1 Stephens' Law of Nisi Prius, 324, 336.) So where one has accepted for honor a protested bill and paid it. In *Pownal* v. *Ferrand, supra*, Tenderton, C. J., says: 'The plaintiff is entitled to recover in assumpsit, upon the general principle that one man who is compelled to pay money which another is bound by law to pay is entitled to be reimbursed by the latter'; and Lord Loughborough in *Jenkins* v. *Tucker, supra*, remarked that there are many cases of the sort (the funeral expenses of another's wife in his absence), for a person having paid money which another was under a legal obligation to pay, though without his knowledge or consent, may maintain an action to recover back the money so paid. The views of Chitty, in his treatise on Contracts, page 469, and of Greenleaf, in his treatise on Evidence, volume 2, section 108, are in harmony with this principle, that where the plaintiff shows that, either by compulsion of law, or to relieve himself from liability, or to save himself from damage, he has paid money, not officiously, which the defendant ought to have paid, a count in assumpsit for money paid will be supported." (See also Pomeroy's Remedies and Remedial Rights, sec. 512.)

We think that there was a legal obligation upon Lloyd to pay Richards and Knight. There was a legal obligation on him to keep the jail and the prisoners. It took men to do this, and it took money to pay the men. Lloyd paid the money on his legal obligation to keep the jail and the prisoners. Therefore, there was the legal obligation to pay his employees. Then, having so paid them on such legal obligation so to do, he can recover from the party, to wit, the county, for whose benefit he paid the money. For the ultimate liability was upon the county to pay these expenses by reason of the necessity for the services, and the authority to incur the expenses therefor.

We are therefore of opinion that the judgment of the district court should be affirmed, and it is so ordered.

*Affirmed.*

HUNT, J., concurs.

The chief justice having determined this case as district judge, does not participate in this decision.