[S. F. No. 1569.    Department One.—October 18, 1898.]

ADINA MITCHELL et al., Trustees of the Whittier Reform School, Petitioners, v. E. P. COLGAN, Controller of State, Respondent.

"WHITTIER REFORM SCHOOL FUND"—"SUPPORT" OF SCHOOL—ERECTION OF BUILDINGS — POWER OF TRUSTEES. — The "Whittier Reform School fund," established by the act of March 11, 1889 (Stats. 1889, p. 111), as amended March 23, 1893 (Stats. 1893, p. 328), for the "support" of said school, and the "care and keeping" of the children committed thereto, cannot be resorted to by the trustees for the erection of buildings, however much needed, and contracts made by them looking to that end are unauthorized. The trustees are dependent upon appropriations made by the state legislature specially for the erection of buildings required for the use of the school, as a state institution; and have no power, merely as a corporate body, to divert funds dedicated by the legislature for a particular use to a different use.

PETITION in the Supreme Court for writ of mandate to the State Controller.

The facts are stated in the opinion.

John W. Mitchell, for Petitioners.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Deputy Attorney General, for Respondent.

CHIPMAN, C.—Petition for writ of mandate. The petition sets forth that by the act of March 11, 1889 (Stats. 1889, p. 111), as amended March 23, 1893 (Stats. 1893, p. 328), there was established for the use of the Whittier State school a fund, known as the "Whittier Reform School fund," under which law there has been paid into the state treasury to the credit of said fund $86,012.61, which will be increased by other payments to the sum of about $125,000; avers the purposes of the school and that there are now therein about two hundred and fifty boys and fifty girls; that among the various buildings is one called the "Trades Building," which, as originally constructed, was for temporary use only; describes the building and avers that by reason of its temporary nature and the jarring of the machinery

used therein it has become dangerous and liable to collapse, and has been condemned by a competent engineer; and to prevent injury to the life and limb of inmates a necessity has arisen to close and abandon the building; that there is no other building belonging to the school which can be used for the trade departments, and that these departments and buildings for their accommodation are necessary for the purpose of the institution, to provide for which plaintiff invited architects to furnish competitive plans for needed buildings, notices of such invitation being published in certain newspapers; for the advertising of notices plaintiff agreed to pay certain sums; and to the successful architects a first premium of $4,050; to the other competing architects a second and third premium of $150 and $100 respectively; claims duly verified for these amounts were presented to plaintiffs and duly audited, allowed, and ordered paid out of the Whittier Reform school fund and were duly certified to defendant as required by section 30 of the act of 1893, *supra*, and he was requested to draw and deliver to plaintiffs his warrant on the state treasurer payable out of said fund; said claims were also presented to the state board of examiners, and the claims for advertising notices were allowed and certified by said board to defendant, but the claims of the architects were not allowed by said board; the defendant refuses to draw his warrant for any of said claims; prayer that defendant be directed to forthwith draw and deliver his warrant to plaintiffs payable out of said fund. Defendant demurs to the petition for insufficiency of facts.

Plaintiffs claim that by section 24 of the acts referred to there was created a special fund in the state treasury, now designated as the "Whittier Reform School fund"; that this fund is subject to any use to which plaintiffs may desire to apply it, if for the benefit of the institution, and that they have the power to expend this fund for the erection of needed buildings. Accordingly, plaintiffs proceeded under the act of April 1, 1872 (Stats. 1871-72, p. 925), as stated in the petition. As the power to erect the building is not conferred by this act, we must look to the acts creating the board in this case. It is claimed that this power is derived from the reform school acts *supra*, and that by section 30 of the act of 1893, it is made the duty of the con-

troller to draw his warrants for moneys expended by the board without reference to the board of examiners.

This reform school was established by the act of 1889, *supra,* and has continued under that act and the amendatory act of 1893, *supra.* The act of 1889 appropriated $200,000 out of the general fund of the state "for the erection, equipment, and maintenance of the building or buildings and grounds of said reform school, as herein provided, for the two years commencing April 1, 1889." The act provided for the commitment to this school of infant boys and girls between certain ages, the expenses for their care to be borne equally by the state and by the county from which such infant is committed, the county money to be paid into the state treasury, and "paid directly by the state treasurer to the superintendent of the reform school for the use of said institution, as herein provided." (Act 1889, sec. 24.) April 6, 1891 (Stats. 1891, p. 484), the legislature appropriated $120,000 mainly for equipment of the various department buildings and other permanent improvements; and by another act appropriated $60,000 "for the support of the Whittier Reform School" (General Appropriation Act, p. 502); having at the same session provided by still another act for a deficiency for like purposes of $10,000 (General Appropriation Act, p. 131). March 23, 1893 (Stats. 1893, p. 296), the legislature appropriated one hundred thousand dollars for the erection of certain buildings and "improvements on the lands belonging to the state at Whittier," and some small expenses of the school; and also by a separate act appropriated for "support" $106,000. (Stats. 1893, p. 192.) By a further act it amended the act of 1889 in many particulars. (Stats. 1893, p. 328.) There was no change made as to the division of expense between the state and county for maintenance of the inmates, except that it was provided that the amount to be charged to the county for the support of the minor was to be "exclusive of the use of the permanent property of the institution"; and all moneys paid by counties were to be placed in the state treasury in the "Whittier Reform School fund for the use of said institution," and were not to be paid to the superintendent by the state treasurer as by the act of 1889. There is nothing in either act to indicate that the county funds were to be used to construct permanent buildings or make permanent

improvements, but, on the contrary, much to show that the state was to provide all necessary buildings and equipment and the counties to pay only one-half of the cost of the support or maintenance of the inmates, and each county was to pay only in proportion to the number of its commitments. The legislation, we think, shows quite clearly that it was to be a state institution and its realty to be the property of the state, and the purpose was to furnish an asylum for the correction and reform of certain minors for whose support and maintenance, and not for the erection of buildings, the counties were to contribute. *Cochran v. Los Angeles County,* 117 Cal. 534, was an action to recover for the care and keeping of children committed from defendant county. In all the acts of the legislature the appropriations made were of two classes—one for buildings and equipment and the other for the support of the school. Section 24 of both acts directs that the trustees, with the approval of the governor, shall "estimate and determine as near as may be the actual expense per month of keeping and taking care of each infant (minor) . . . . not including the use of the grounds and buildings." This is the method of ascertaining what the county shall pay, and it is the expense or cost of taking care of the inmates of which alone the county is to pay one-half. We can discover nowhere in any of the acts any authority given to the trustees to enter upon the erection of buildings except as they are specially empowered by the acts themselves and out of the funds appropriated for building purposes. It does not appear from the petition that the trustees propose to use any unexpended building fund or to erect any of the buildings referred to in any of the acts; nor does it appear that the funds on hand are any other than such as have been created for the care and support of the inmates. The act of 1889 required the county to pay into the state treasury, and the act of 1893 did the same, but provided that the fund should be designated and known as the "Whittier Reform School fund," but in both cases "for the use of said institution." Such use, however, we do not think can be made to include the erection of new buildings, for the act in terms provides that the county funds are for "the keeping and taking care of each minor committed to said institution." The general appropriation act of April 1, 1897 (Stats. 1897, pp. 363, 366),

carries $108,800 "for support of Whittier State School," and provides that "not more than $500 of this money shall be used for permanent improvements," and points out how it shall be used. Of course, the word "support," as plaintiffs claim, may be said to mean "for the use of said institution," but, conceding this, it does not, in our opinion, aid plaintiffs' construction; on the contrary, as we view it, it is strong proof that the legislature never intended to give the trustees unlimited power to divert the county and state money to the erection of buildings, which money was appropriated by the state and contributed by the counties for the "support" and the "care and keeping" of the children committed to the school.

It is claimed by plaintiffs that section 3 of the act of 1889 creates the trustees "a body corporate and politic," with the right "to exercise all the power usually belonging to said corporations"; with the right "to receive, hold, use, and convey or disburse moneys or other properties, real and personal," and with the "power to make contracts, to sue and be sued, plead and be impleaded"; whence it is contended that the trustees are endowed with "almost plenary powers for the control and direction of the assets and affairs of the institution," subject only to the exceptions in that section prescribed. One of these is "that they shall not have power to bind the state by any contract or obligation beyond the amount of the appropriations which may at the time have been made for the purposes expressed in the contract or obligation." Plaintiffs say in response to this provision that the contracts they have made and propose to make are "for the use of the institution," and do not exceed the amount of the fund on hand; and, as "use of the institution" includes the erection of buildings, the trustees are thus using the fund "for the purposes expressed in the contract or obligation." But this assumes that the terms "use of the institution" are as broad as claimed by plaintiffs, in which we cannot concur. These trustees are given no unusual and extraordinary powers. The fact that they are constituted a body corporate and politic, with the powers above stated, does not authorize them to divert funds dedicated to particular uses to some entirely different use. We cannot believe from anything expressed in the various acts that the legislature intended by the phrase "use of the institution"

to say that moneys contributed by counties and appropriated by the state for the "care and keeping" of the inmates of this school and the "support" of the institution might be used to rebuild a structure. It may be that should a building be destroyed by fire; or, as in this case, become unsafe and dangerous and liable to collapse and for that reason be abandoned, the usefulness of the school may thereby become greatly embarrassed; still, we cannot find that the legislature has given the trustees power in such a case to divert funds, provided for the support and maintenance of the school, to the erection of new buildings. A construction which would permit this use to be made of the county and state funds under the clause "the use of the institution" would be far more likely to lead to abuses than would the construction we give offer "the temptation of having the fund expended for extravagant maintenance and higher salaries," as suggested by plaintiffs. Besides, it would take from the legislature the power we think it has reserved to itself of determining what buildings the state requires for its public institutions.

Our conclusion is, that the "Whittier Reform School fund" referred to in the statutes cannot be resorted to by the trustees for the erection of buildings, and that the contracts made looking to that end were unauthorized.

Whether claims such as are here involved should be presented to the board of examiners need not be and is not decided. The writ should be denied.

Belcher, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the writ is

Harrison, J., Garoutte, J., Van Fleet, J.