MAJORS, APPELLANT, *v.* COUNTY OF LEWIS AND CLARK
ET AL., RESPONDENTS.

(No. 4,433.)

(Submitted September 14, 1921. Decided October 3, 1921.)

[201 Pac. 268.]

*Counties—Jails — Sheriffs — Federal Prisoners — Subsistence— Compensation—To Whom Payable.*

Counties—Subject to Legislative Control.
    1.  Counties are political subdivisions of the state and as such subject to legislative supervision and control.

Same—Jails—Federal Prisoners—Compensation.
    2.  Under section 9763, Revised Codes, counties must furnish the use of their jails without compensation for the accommodation of federal prisoners, the United States government being required to pay for their support or subsistence only.

Same — Federal Prisoners — Subsistence — Contract With United States— Parties.
    3.  *Held,* that the provision of section 5547, United States Revised Statutes, making it the duty of the Attorney General of the United States to contract with "the managers or proper authorities having control" of federal prisoners in county jails for their subsistence, contemplates that the contract shall be made with the sheriffs and not with the boards of county commissioners, the former, under Code

provisions, being the custodians of the jails and answerable for the safekeeping of the persons therein confined.

**Same—Federal Prisoners—Subsistence—Compensation—To Whom Due.**
4.  Where a contract for the subsistence of federal prisoners in a county jail was entered into between the Attorney General of the United States and the board of county commissioners instead of with the sheriff as it should have been (par. 3, above), the funds received by the county for such service inured to the benefit of the sheriff, were not public funds and had no place in the county treasury.

**Same — Board of Prisoners — Statutory Provision — Applicable to What State Prisoners Only.**
5.  Section 3138, Revised Codes, limiting the fees of the sheriff for the board of prisoners to fifty cents per day for each prisoner, has reference to prisoners confined by state authority and not to federal prisoners.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

Action by Edward J. Majors against Lewis and Clark County, and another. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Messrs. McIntire & Murphy,* for Appellant, submitted a brief; *Mr. H. G. McIntire* argued the cause orally.

Under the statutes of Montana, the sheriffs of the various counties, and not the boards of county commissioners, are the "manager or proper authorities" having control of federal prisoners in county jails within the meaning of section 5547, United States Revised Statutes. (*Lloyd* v. *Board of Commrs.,* 15 Mont. 435, 39 Pac. 457; *In re Kays,* 35 Fed. 288; *Avery,* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702.)

That a board of county commissioners has no authority to enter into contracts for other purposes than those authorized by statute is practically axiomatic in Montana, for this court has repeatedly held that a "board of county commissioners is a body of limited jurisdiction, and before a power may be exercised by it, the authority for action must be found written in the law, or it must be clearly implied from some express grant of power." (*State ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144; *State ex rel. Lambert* v. *Coad,* 23 Mont. 131,

57 Pac. 1092.)    The statutes do not authorize such boards to make contracts with the United States government for the support of federal prisoners, nor is any such authority deducible from any statute. (*Kelly* v. *Multnomah County,* 18 Or. 356, 22 Pac. 1110.)    Nothing that we can say in this regard can improve upon the language of this court in *Lebcher* v. *Commissioners of Custer Co.,* 9 Mont. 315, 320, 23 Pac. 713.

Now, what is the contract or agreement with the United States authorities in the present instance? The complaint alleges, and the demurrer admits, that it is for the *"support"* of federal prisoners.    This includes, as we have suggested, much more than their *board.*    This latter word is defined "to furnish with meals, or with meals and lodging, especially for pay" (New Standard Dictionary), but the word "support" is defined, "to supply means for the maintenance of; to furnish with what is needed; provide for." (*Id.*)    The distinction between the two words has been consistently and regularly pointed out by the courts and enforced. (See *Kelly* v. *Multnomah County, supra; Norton* v. *Sims,* 85 Kan. 822, 118 Pac. 1071; *Wall* v. *Williams,* 93 N. C. 327, 53 Am. Rep. 458.)

The present action is one for the recovery of moneys received by the respondents but to which the appellant is equitably entitled.    That such an action lies is well settled, the rule deducible from the cases being, "whenever a man receives money belonging to another without any reason, authority or consideration, an action lies against the receiver as for money received to the other's use; and this as well where it is received through mistake under color, and upon an apprehension of having a good authority to receive it, as where it is received by imposition, fraud or deceit in the receiver." There need be no privity between the receiver and the person entitled to the money, nor promise to pay, and the action lies as well against a municipal corporation as against an individual. The following authorities abundantly sustain the above principle. (*Mer-*

*chants' & M. Bank* v. *Barnes,* 18 Mont. 337, 56 Am. St. Rep.
586, 47 L. R. A. 737, 45 Pac. 218; *Soderberg* v. *King County,*
15 Wash. 194, 55 Am. St. Rep. 878, 33 L. R. A. 670, 45 Pac.
785; *Mumford* v. *Wright,* 12 Colo. App. 214, 55 Pac. 744, 746;
27 Cyc. 864.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Otto A. Gerth,*
Assistant Attorney General, for Respondent, submitted a brief;
*Mr. L. A. Foot,* Assistant Attorney General, argued the cause
orally.

The principle for which we are here contending is that when a
county, as such, makes contracts, the contracting party is the
county itself and not the official through whom it is executed.
The official is merely the agent of the county through whom
it acts, be it contractually or otherwise. (*Gannon* v. *Hohusen,*
14 Ariz. 523, 132 Pac. 566.) In the case of *Avery* v. *Pima
County,* 7 Ariz. 26, 60 Pac. 702, we find an authority for
the contention of the respondent in the case at bar, to the effect
that regardless of what particular officer of the county makes
a contract with the federal government for the support and
maintenance of the federal prisoners in the county jail, such
contracts are made for the county and not for the individual
county officials. The proceeds of such contract go to the county
and not to the individual official as his private fund. The
statutes of Arizona upon the proposition here involved are
similar to those of Montana.

The appellant contends that a distinction is to be made be-
tween state prisoners and federal prisoners so far as the sheriff
is concerned. So far as our search goes, no distinction is
made and the appellant has cited no section of our statute
making that distinction so far as the sheriff's remuneration is
concerned. In addition to this the appellant's argument ana-
lyzed would result in very extravagant claims. He claims the
right as sheriff to use the county jail in which to house pris-
oners committed to his charge by the federal government. He

claims that the contract to be made with the federal government, so far as the county is concerned, is a private contract between the sheriff and the federal government, the proceeds of which go to the sheriff. This would result in the proposition that the sheriff need not account to the county for the use of the jail which it has constructed, for the light and heating which it furnishes, for the time of the jailers, and his own time which the county owns by virtue of a salary which it pays the jailer and the sheriff.

The beneficiary under the contract with the federal government is the county itself and not the sheriff. It is correctly said in the case of *Gannon* v. *Housen, supra,* that the county commissioners are the agency through which the county acts. The same would be true if the sheriff acted instead of the county commissioners. It is also correctly said in the case of *Avery* v. *Pima County, supra,* that even though the sheriff by virtue of his being in charge of the jail and having control of the prisoners, should be the proper party to contract with the federal government, the money would pass through his hands into the county treasury. The sheriff is an employee of the county for which he receives full compensation. He cannot set himself up in the business of a sort of compulsory hostler and make side money at the expense of the county.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover money alleged to have been received by the defendant to the plaintiff's use.

The complaint sets forth that from January, 1917, to January, 1919, plaintiff was sheriff of Lewis and Clark county; that during his term there were confined in the Lewis and Clark county jail a large number of persons committed thereto by judgments or orders of the federal authorities for this district—the total number of days during which such persons were so confined amounted to 7,886; that by agreement the

United States paid for the subsistence of such persons seventy-five cents per day, amounting to $5,914.50; that this amount was received by the defendant county and was the reasonable compensation for the services rendered and the actual amount expended by plaintiff therefor; that the county has paid to plaintiff only $3,942 or at the rate of fifty cents per day per person so confined, and has retained the balance, the equivalent of twenty-five cents per day, and has refused to pay the same or any part thereof to plaintiff. The prayer is for $1,971.50. A general demurrer was sustained to this complaint, judgment entered dismissing the action, and plaintiff appealed.

The trial court proceeded upon the theory—indicated in a memorandum opinion—that since the statutes of this state then in force limited the compensation of the sheriff for board of prisoners to fifty cents per day per prisoner, plaintiff could not recover more than that amount.

The one question presented for determination is: To whom does the money paid by the United States for the subsistence of federal prisoners belong? It is beyond controversy that the United States cannot compel any state or territory to care for federal prisoners and that the consent of the state or territory, as the case may be, to do so for the accommodation of the federal government is necessary. By joint resolution of the first Congress (September 23, 1789) the several states were requested to consent to the use of their common jails for the detention of federal prisoners and to require their proper officers to receive, support and safely keep such prisoners until discharged in due course of law, the United States to pay for the support of such prisoners and also pay fifty cents per month for each prisoner so confined therein for the use and upkeep of every such jail so used.

So far as our information goes, every state has acceded to the request expressed in the joint resolution above, to the extent that federal prisoners may be confined and cared for in local jails. By an Act approved January 12, 1872 (5th Div.,

Comp. Stats., sec. 1275), the territory of Montana expressed its consent, but undertook to define the terms upon which the privilege might be exercised, *viz.*, that the United States should pay for the support of such prisoners and the legal fees of the jailers and also ten dollars per month to the county whose jail was so used for the use and upkeep of the jail.

Whatever may be said of the legislative policy expressed in these early statutes, the attempt by either the federal government or the territorial legislature to prescribe specific compensation for the use of local jails was abandoned. Section 5547, United States Revised Statutes, provides: "The Attorney General shall contract with the managers or proper authorities having control of such prisoners, for the imprisonment, subsistence and proper employment of them." Section 3026, Political Code, 1895, provided: "The sheriff must receive and keep in the county jail any prisoner committed thereto by process or order issued under the authority of the United States, until he is discharged according to law, as if he had been committed under process issued under the authority of this state; provision being made by the United States for the support of such prisoner." The provisions of section 3026 have been in effect continuously since their enactment and are now found in section 9763, Revised Codes.

This state might have refused to permit its jails to be used for the incarceration of federal prisoners unless compensation was made therefor, but it saw fit, as it had the right to do, to relinquish the claim asserted in the territorial statute above [1, 2]   and to limit its demand to the single item included in section 9763, *viz.*, provision for the support of such prisoners, and since Lewis and Clark county is but a political subdivision of the state and subject to legislative supervision and control (*Hersey* v. *Neilson*, 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30), it is bound by the statute and cannot complain that it is required to furnish the use of its jail, without

[60 Mont. 608.]
compensation, for the accommodation of the general government.

It is perfectly apparent from this brief history that the term "support" is employed in section 9763 as synonymous with the term "subsistence" employed in section 5547, United States Revised Statutes. Indeed, the two terms are synonymous according to all standard reference works. Neither argument nor authorities can fortify the conclusion which is compelled that it was the intention of the United States and this state that by contract the former should pay for the support or subsistence only, of federal prisoners confined in a county jail.

[3] The statute (section 5547) above requires that such contract shall be made by the Attorney General for the United States, on the one part, with the person or body having the management and control of such prisoners, on the other. By this process of elimination the controversy before us is reduced to an answer to the inquiry:

To whom is reference made in the phrase "the managers or proper authorities having control of such prisoners?" It cannot be contended that there is any subtle meaning concealed in the language employed. The terms are in common use and generally understood, but any possible controversy over the construction of the phrase is obviated by express legislative declaration. Section 5539, United States Revised Statutes, provides that whenever any federal prisoner is confined in a county jail, he shall be under the exclusive control of the officer having charge of such jail pursuant to the law of the state in which the jail is situated. Section 3010, Revised Codes, imposes upon the sheriff the duty to "take charge of and keep the county jail and the prisoners therein." Section 9759, Revised Codes, provides that "the common jails in the several counties of this state are kept by the sheriffs of the counties in which they are respectively situated," *etc.* Section 9764 provides that a sheriff to whose custody a federal prisoner is committed is answerable for his safekeeping in the courts of the United States according to the laws thereof. Under like

statutory provisions this court declared that the sheriff has the custody of the jail of his county and the prisoners therein. He is to keep the prisoners and he is personally liable for their escape if it occurs. (*Lloyd* v. *Board of Commrs.,* 15 Mont. 433, 39 Pac. 457).

From these considerations it follows as of course that the sheriff is the proper party with whom the contract is to be made for the subsistence of persons committed to the jail by federal authority, and this is the conclusion reached by the courts which have been called upon to construe statutes similar to our own. (*In re Kays,* 35 Fed. 288; *Avery* v. *Pima County,* 7 Ariz. 26, 60 Pac. 702.) It is altogether immaterial that in [4] this instance the contract was made in the name of Lewis and Clark county. It inured to the benefit of the plaintiff. The funds received from the United States were not in any sense public funds and had no place in the county treasury. They were received to the use of the plaintiff to whom they belonged under the contract and upon whom the burden was imposed to provide the subsistence for the person so incarcerated.

The trial court fell into error in assuming that section [5] 3138, Revised Codes, relates to the support of persons confined in a county jail by federal authority. That section has to do only with the *board* of such prisoners as are confined by state authority. No one could contend seriously that the term "board" used therein means the same as the term "support" employed in section 9763, Revised Codes, or the term "subsistence" used in section 5547, United States Revised Statutes.

The complaint states a cause of action and the court erred in sustaining this demurrer. The judgment is reversed and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER, and GALEN concur.