GAVIGAN, Public Administrator, Respondent, v. SILVER BOW COUNTY, Appellant.

(No. 7,329.)

(Submitted January 31, 1935.  Decided February 13, 1935.)

[41 Pac. (2d) 409.]

*Mr. H. J. Freebourn* and *Mr. Clarence Hanley,* for Appellant, submitted a brief; *Mr. Hanley* argued the cause orally.

*Messrs. Kremer & Kremer* and *Mr. Grant Kelleher,* for Respondent, submitted a brief; *Mr. Alf. Kremer* argued the cause orally.

MR. CHIEF JUSTICE SANDS delivered the opinion of the court.

Plaintiff (respondent here), as public administrator of Silver Bow county, Montana, acting under the provisions of section 10000, Revised Codes 1921, made to the district court of that county her return of all estates of decedents which had come into her hands, which report set forth all the facts required to be stated in that section, and thereafter published the same in a newspaper in the county, and later filed with the county auditor a claim in the sum of $255.19 for the cost of publishing the report. The claim was approved by the auditor and referred to the board of county commissioners with the auditor's approval indorsed thereon. The commissioners disallowed the claim, and plaintiff instituted this action in the district court to recover the amount of the claim. The defendant county interposed a special demurrer to the complaint on the ground that it was ambiguous, unintelligible, uncertain, and that it could not be told therefrom how many, if any, of the estates in plaintiff's hands, and reported and published as alleged, were estates of decedents without known heirs and, as a result, would escheat to the state, and how many estates, if any, were estates with known heirs and would not escheat to the state. The same demurrer also attacked the complaint generally. The demurrer was overruled, and defendant interposed an answer in which it admitted that plaintiff is the duly elected, qualified and acting public administrator of the county, the printing of the report, the approval of the claim by the county auditor, and the disallowance thereof by the board of county commissioners, and no question was raised as to the amount of the claim or the manner of the publication of the report. The answer alleged there were thirty-eight estates administered by the plaintiff, that six were of the value

of less than $100, and the balance were of a value between $100 and $20,000. Many of these estates were estates in which there were known heirs, and only one of the estates, of the value of $66.87, would escheat to the state.

Plaintiff interposed a motion to strike from the answer all matters alleged therein regarding the number and value of the estates as immaterial, which motion was by the court sustained. Defendant refusing to plead further, plaintiff moved for judgment on the pleadings. This motion was granted, and the court made an order for judgment on the pleadings. Hence the appeal. Defendant specifies as error: (1) That the court erred in overruling the demurrer, (2) in granting the motion of plaintiff to strike, and (3) in granting the motion for judgment on the pleadings.

The only question presented by this appeal is whether the cost of printing and publishing the semi-annual report of the public administrator should have been allowed by the board of county commissioners.

The contention of the appellant is that, in the absence of statutory provision, the cost of printing and publishing the semi-annual report of the public administrator is not a proper charge against the county. Respondent, on the other hand, bases her right to recover upon the ground that the report is required to be published by express statutory command and an incident of the office, and that therefore the expense thereof is a proper charge against the county.

The office of public administrator is a fee office, dependent upon the value of the several estates which are administered through the office. The statute, section 10000, supra, reads as follows: "The public administrator must, once in every six months, make to the district court or a judge thereof, under oath, a return of all estates of decedents which have come into his hands, the value of the same, the money which has come into his hands from each estate, and what he has done with it, and the amount of his fees and expenses incurred, and the balance, if any, remaining in his hands; publish the

same once in each week for six weeks in some newspaper published in the county, or if there is none, then post the same, legibly written or printed, in the office of the clerk of the district court of the county.''

Manifestly, there are only three sources of payment, either (1) from the commissions of the public administrator which constitutes his compensation for services rendered, or (2) from the funds of the estates handled, or (3) from the funds of the county. If the office of public administrator were a salaried office and he were commanded by statute to make this publication, we assume no objection would be made to this charge. The incidental expenses, such as office supplies, stationery, and printing furnished to each of the several county officers are regularly paid without special statute, without comment, and without objection. We see no reason for drawing a distinction in this behalf between salaried and commission offices. The cost of publishing the report in question is not a proper charge against the commissions received by the public administrator.

Neither do we see how it would be practical or expedient to collect the publication charge from the several estates administered by the public administrator. Some of the estates escheat to the state. The report is required in the interest of public safety from possible frauds. In addition, the public notice will give notice to the heirs of decedents who may perhaps fail to appreciate the necessity of the administration of estates, especially small ones. Counsel for appellant base the refusal of the county commissioners to pay the claim upon the ground that the county receives no benefit. Where there are no known heirs, estates escheat to the state, and it is the duty of the county to see that these escheated estates are properly administered. We believe the protection of the public should alone be sufficient to warrant the county in paying the claim. However, since the statute requires the publication by a county officer, it impliedly requires payment by the county. (*Williams* v. *Board of Commissioners of Henry County*, 27 Ind. App. 207, 60 N. E. 1099; *Lloyd* v. *Board of Commissioners*, 15 Mont. 433,

39 Pac. 457, 459.) An excerpt from the opinion in the latter case from our own court is particularly pertinent here: "There was a legal obligation on him [the sheriff] to keep the jail and the prisoners. It took men to do this, and it took money to pay the men. Lloyd paid the money on his legal obligation to keep the jail and the prisoners. * * * Then, having so paid them on such legal obligation so to do, they can recover from the party, to wit, the county, for whose benefit he paid the money. For the ultimate liability was upon the county to pay these expenses by reason of the necessity for the services, and the authority to incur the expense therefor." Citation of further authorities seems unnecessary.

We hold, therefore, that it is the duty of the county, imposed by law, to pay the cost of publishing the semi-annual report of the public administrator.

The judgment is affirmed.

ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur.

MR. JUSTICE MORRIS, absent on account of illness, takes no part in the above decision.

Rehearing denied February 26, 1935.