**STATE ex HERBERT, Attorney General, Plaintiff v. VERMILLION, Admr., Defendant.**

Common Pleas Court, Franklin County.

No. 160615.   Decided October 7, 1943.

Hon. Thomas J. Herbert, Atty. Genl., Columbus; Mr. J. A. Tate, Asst. Atty. Genl., Columbus, for. plaintiff.

Mr. John F. Seidel, Columbus, and Mr. David Evans, Columbus, for defendant.

## OPINION

By LEACH, J.

This cause, a jury having been waived, was submitted to the court on an agreed statement of facts.

This is an action brought by the State under the so-called pay-patient law for the recovery of money claimed to be due the State for the support of one Philip L. Vermillion while a patient in the Columbus State Hospital.

The principal question is whether the amount due under §1815-2 GC, should be five dollars and 50 cents ($5.50) per week, stated in said section to be "the maximum rate for the support of inmates of such institutions", or whether it should be per capita cost, exclusive of depreciation, interest on investment, costs of additions and betterments, and cost of operation of the Columbus office that supervises the institution, or inclusive of some of these latter and exclusive of others.

In the case of **Slade et v Ferguson,** No. 152,891, the same questions were under consideration, and a special master gave exhaustive consideration to them, particularly the Constitutional question. His findings and conclusions were approved by another branch of this court.  The special master found that only by permitting costs, ex-

clusive of the items enumerated, could constitutional requirements be met. This branch of the court is content, without restating them, to follow the principles laid down in that case, not only for the reason that said questions have been determined by the special master and by another branch of this court, but also for the reason that this branch of the court finds himself in accord with the reasons therein given for such determination.

A copy of the special master's report in so far as it deals with questions parallel with those here involved is appended hereto.

It follows that the State is entitled to charge in this case as follows, calculated from Exhibit 1:

Year
1931  20 6/7 weeks at $3.30 per week_____$ 68.83
1932  52 2/7  "  "  2.94  "  "  _____ 153.72
1933  52 1/7  "  "  2.73  "  "  _____ 142.35
1934  52.1/7  "  "  3.04  "  "  _____ 158.51
1935  52 1/7  "  "  3.14  "  "  _____ 163.73
1936  52 2/7  "  "  3.23  "  "  _____ 168.88
1937  52 1/7  "  "  3.61  "  "  _____ 188.24
1938  52 1/7  "  "  3.79  "  "  _____ 197.62
1939  47 5/7  "  "  4.04  "  "  _____ 192.78

Above covers period from August 7, 1931 to November 30, 1939, a period of 433 weeks, 6 days.

$300.00 has been paid and was credited at the rate of $5.50 per week from July 21, 1930, to Aug. 7, 1931, a period of 54 4/7 weeks.

At cost the charge for said period should have been, as shown by Exhibit 1:

1930  23 3/7 weeks at $4.05 per week_____$ 94.88
1931  31 1/7  "  "  3.30  "  "  _____ 102.79

                                Total_____$197.87

$300.00 minus $197.87 equals $102.13, which should, therefore, be a credit.

$1434.64 less credit $102.13 equals $1332.51, for which amount with interest at 6% from January 9, 1940, being the date when the claim was rejected by the administrator, the plaintiff is entitled to judgment. An entry may be drawn accordingly. Motion for new trial may be filed and overruled, with exceptions.

EXCERPTS FROM MASTER COMMISSIONER'S REPORT.
In Case of Slade v Ferguson, No. 152891.

"The principal question for decision on the merits is whether $5.50 per week or the actual costs of support of inmates in feeble-

minded institutions is chargeable against the county."

In the memorandum submitted in connection with my application for instructions I discussed the history of the pertinent constitutional provisions, **Article VII, Sec. 1**, and of §§1815-2 and -12 GC, and the decisions relative to them (Pages 4-7 of Memorandum), and reached the following tentative conclusions:

(1) There is a relationship between §1815-2 and §1815-12 GC. (Pages 8-9 of Memorandum).

(2) From the language of §1815-2 and a consideration of the legislative intent, two interpretations are possible—one that $5.50 is the rate, the other that it is the **maximum** rate. If one interpretation will render the statute constitutional and the other render it unconstitutional, the former should be adopted. (Pages 9-12 of Memorandum).

(3). In determining the question of whether one interpretation will render the statute constitutional and the other render it unconstitutional, the actual cost of support must be determined. (Pages 14-15 of Memorandum and Judge Randall's decision).

(4) If there is no reasonable relationship between such cost and the $5.50 rate, §1815-2 GC would be unconstitutional, if $5.50 were interpreted as the rate, rather than as the maximum rate. It should be interpreted so as not to be unconstitutional. If, therefore, $5.50 as the rate is found to be arbitrary, it should be interpreted as the **maximum** rate, and the county should be held chargeable on an actual cost basis. If, on the other hand, the $5.50 rate is not arbitrary and therefore constitutional, the statute may be interpreted as fixing it as the rate rather than as the **maximum** rate. Such interpretation depends upon language and legislative intent. (Pages 9-16 of Memorandum).

What was the Cost of Support during the Period in Question?

This involves, in the first place, a determination of what is included in "support". Five different bases are developed in the evidence. Let us examine them in order.

(1) Operating expenditures less challenged item basis.

The annual reports of the Department of Public Welfare tabulate certain expenditures and set forth a total as operating expenditures. The annual reports for the years from 1925 to 1938, inclusive, were admitted in evidence as Exhibits 3 to 16, inclusive. Exhibits containing all of the relevant material from such reports were prepared and admitted in evidence, and it accordingly is unnecessary to refer to them. Such operating expenditures include maintenance expenditures plus personal service expenditures. (R. 159, 299. 351; Ex. 2, note 2). The figure is reflected in a number of exhibits. Thus. in Exhibit No. 2. the total operating expenditures are shown in the second column and the annual per capita on operating expenditures in the fifth column; in Exhibits No. 22, and No. 24, the annual per

capita on operating expenditures as shown in Exhibit No. 2 is carried forward and is reduced to a weekly and daily basis; in Exhibit No. 36 the total operating expenditures and the yearly and weekly per capita on operating expenditures are shown. The items which are included in computing such operating expenditures and the amounts of each are shown in Exhibit No. 32.

It is claimed by the plaintiffs that the cost of support is such operating expenditure less certain challenged items which are detailed in Part 2 of Exhibit No. 32. In general, the challenged items are educational and recreational equipment and supplies; medical and surgical, office, household, agricultural and other equipment; road, building and manufacturing and other materials, building and other repairs; teachers' retirement fund; and paper, printing and binding. The per weekly expenditure per patient on this basis is set forth in Exhibit No. 37 and for all institutions is as follows:

| | |
|---|---|
| 1926 | $3.36 |
| 1927 | 3.57 |
| 1928 | 3.50 |
| 1929 | 3.15 |
| 1930 | 3.71 |
| *1932 | 2.59 |
| 1933 | 2.52 |
| *1938 | 3.22 |

Average for above eight years—$3.20 plus.

*During these five years there was no breakdown in the annual reports showing the amounts expended for the claimed objectionable items (R. 416).

(2). Operating expenditures.

As stated above, operating expenditures are shown by various exhibits and, based upon such operating expenditures, the per capita per week for all institutions as taken from Exhibit No. 36 is as follows:

| | |
|---|---|
| 1928 | $3.77 |
| 1929 | 3.64 |
| 1930 | 3.92 |
| 1931 | 3.40 |
| 1932 | 2.80 |
| 1933 | 2.69 |
| 1934 | 3.08 |
| 1935 | 3.21 |
| 1936 | 3.22 |
| 1937 | 3.36 |
| 1938 | 3.50 |

Average for above years—$3.28.

(3). Total expenditure basis.

This basis is operating expenditures plus additions and betterments (R. 35, 351; Exhibit 2, note 2)—that is, operating expenditures plus capital outlay. (R. 36, 351). Such total expenditures are shown in the third column and the yearly per capita on such total expenditures is shown in the sixth column of Exhibit No. 2; the weekly per capita on this basis for the Columbus and Orient institutions is shown in Exhibits No. 21 and No. 23 and are as follows:

| Columbus (Ex. No. 21) | | Orient | |
|---|---|---|---|
| 1925 | $5.76 | 1926 | $5.50 |
| 1926 | 3.80 | 1927 | 4.36 |
| 1927 | 4.01 | 1928 | 4.06 |
| 1928 | 4.52 | 1929 | 3.77 |
| 1929 | 5.69 | 1930 | 4.19 |
| 1930 | 3.95 | 1931 | 3.28 |
| 1931 | 3.11 | 1932 | 2.61 |
| 1932 | 2.71 | 1933 | 2.51 |
| 1933 | 2.57 | 1934 | 3.02 |
| 1934 | 3.05 | 1935 | 3.04 |
| 1935 | 3.28 | 1936 | 3.09 |
| 1936 | 3.99 | | |

Average for above years for Columbus__$3.87
Average for above years for Orient_____ 3.58 plus
Average for both institutions_____ 3.73

(4) Operating expenditures plus interest on investment, allowance for depreciation and administrative and purchasing department expense basis.

In the accountant's report (Defendants' Ex. A. and A-1), to the operating expenditures as shown in the annual reports, there are added the other items referred to above. A computation is then made of the average per capita on this basis, which was $4.52 for the eleven year period from 1928 to 1938, inclusive (Defendants' Ex. A-1; R. 382).

(5) The $5.50 basis.

This, of course, is the basis on which the county has been charged. It is the basis which defendants urge is the proper one under the statute.

Defendants maintain that, regardless of the cost of support, the rate for support is $5.50 per week. Plaintiffs maintain that the rate for support must be the cost of support. We might safely assume that plaintiffs would urge that the lowest possible cost (Basis [1]) was the proper basis for fixing the rate. We might likewise safely assume that defendants. if, for the sake of argument, they accepted any cost as the basis for a rate, would urge the highest rate (Basis

[4]). Plaintiffs' statement in their brief, however, is that "the costs of construction of buildings, of improvements, repairs and annual depreciation of property" should not be included in "support". (Plaintiffs' brief, pp. 6-8). This statement does not specifically eliminate the second, third or fourth bases discussed above. For example, it does not exclude all of the elements in Basis No. (4); it excludes more than additions and betterments, which is the distinguishing feature of Basis No. (3); it excludes some items found in operating expenditures, Basis No. (2), but does not include all of the items claimed as objectionable in reaching Basis No. (1).

On the other hand, defendants simply say that it is clear that training and education are proper items to be considered in determining the cost of support. (Defendants' brief, pp. 10-12). Since plaintiffs have not claimed that personal service items, which includes salaries for training and education, are not included in "support", they would agree with this statement in Defendants' brief. Plaintiffs object to items for educational and training equipment, but defendants have not specifically urged that they be included, although they have done so by inference.

The fact of the matter is that plaintiffs have gone to great pains in the proof to develop Basis (1) and have stated that they contend it is the proper basis of charge. (R. 415). Likewise the only alternative to Basis (5) developed by defendants is Basis (4). Regardless of the briefs we shall assume the question at issue to be—**If Basis (5) is not adopted, which basis is the proper one for "costs of support"?**

I am of the opinion that Basis (2) is the proper one.

**Article VII, Section 1,** of the **Ohio Constitution** provides as follows:

"Institutions for the benefit of the insane, blind, and deaf and dumb, shall always be fostered and supported by the state; and be subject to such general regulations as may be prescribed by the general assembly."

Although feeble-minded institutions are not there enumerated, they are undoubtedly within the contemplation of the section. (See **State ex v Huwe, 105 Oh St 304** [1922]). Feeble-minded are wards of the state. (**Rice, Gdn. v Ohio, 14 Oh Ap 9** [1918]). The State accordingly provided institutions for them. But the constitutional provisions were not self-executing, the mode by which the institutions were to be fostered and supported was left to the discretion of the general assembly. (**State v Kiesewetter, 37 Oh St 546** [1882]; **State ex v Huwe, supra**). The general assembly, at first, provided that inmates of benevolent institutions should be maintained at the expense of the state, subject only to the requirement that they be neatly and comfortably clothed and their traveling and incidental expenses paid by themselves or those having them in charge, and

that in the event of failure to do so, the county from which the inmated came should pay the bill, and take appropriate collection steps. (R. S. Sec. 631, 632; now §§1815, 1816 GC).

The legislature next provided that relatives, guardians and friends should pay for the support of patients. (§§1815-1 to -10). This was the so-called "pay-patient law". Later, the county was made liable for the inmate's support if it was not otherwise paid. (§1815-12 GC).

There can be no doubt but that the purpose of these enactments was to require those responsible for the inmate or the county to provide clothing, food, care, teaching and similar material things and services for the feeble-minded patient. The state seeks to include in the definition of "support" what may, in general, be called capital outlay and departmental expense of departments furnishing services to the feeble-minded institution. The county, on the other hand, seeks to eliminate from it items of physical equipment, repairs and similar expenditures which are not directly traceable to keeping the individual inmates "body and soul together", but which are necessary to continued operation of the institutions.

I have no difficulty in reaching the conclusion that Bases No. (3) and No. (4) are not proper. Both involve a charge for support which includes the cost of buildings and capital equipment. Basis No. (3) does so directly by including "additions and betterments". Basis No. (4) does so indirectly through allowance for depreciation on buildings and capital equipment. "Support", of course, has many meanings. Its meaning and scope in the statute here involved presents a question of interpretation peculiar to the particular statutory scheme in which it is found. The authorities cited by counsel for plaintiffs in their brief are, however, helpful on the definition of "support", and, while they do not go to the extent of supporting Basis No. (1), as claimed, they do point toward the elimination of Bases No. (3) and No. (4). Thus, in Mitchell v Colgan, 122 Cal. 296, 54 P. 905 (1898), the question was whether architects' fees for plans for a new building for a reform school was within the scope of statutes providing for "care and keeping" of inmates and "support" of the institution. The court held them not to be saying:

"There is nothing in either act to indicate that the county funds were to be used to construct permanent buildings or make permanent improvements. but, on the contrary, much to show that the state was to provide all necessary buildings and equipment. and the counties to pay only one-half of the costs of the support and maintenance of the inmates. and each county was to pay only in proportion to the number of its commitments. The legislation, we think, shows quite clearly that it was to be a state institution. and its realty to be the property of the state; and the purpose was to fur-

nish an asylum for the correction and reform of certain minors, for whose support and maintenance, and not for the erection of buildings, the counties were to contribute. * * We cannot believe * * that moneys contributed by counties and appropriated by the state for the "care and keeping" of the inmates of the school and the "support" of the institution might be used to rebuild a structure * * *. The Trustees (cannot) divert funds provided for support and maintenance of the school to the erection of new buildings."

Likewise, in Roach v Gooding, 81 P. 642 (Idaho, 1905), the issue was whether a fund limited to "support" of schools could be used for erection of buildings. Holding that it could not be, the court said:

"It was not intended that any portion of it should be used in the erection or equipment of buildings, but only for current expenses—the support and maintenance of the school, for ordinary annual school purposes. * * * 'Support * * * means the maintenance of the school * * * the ordinary current expenses of maintaining the school—and not the erection of buildings or the equipment thereof'."

See also: Love v Rockwell Ind. School Dist., 194 S. W. 659 (Tex. 1917). Whetmore v Brown, 279 P. 447 (Cal. 1929); Arnold v Bond, 34 P. (2d) 28 (Wyoming, 1934).

The reason for not allowing interest on investment is for much the same reason as has just been stated. If the cost of buildings and capital equipment is not properly included in support, I can conceive of no basis on which interest on the investment in such building and equipment would be.

Administrative and purchasing department expense are too remote from the "support" of the inmate in the particular institution to be included. Of necessity there is inter-relation between the work of the various state departments and between the institutions under the control of the Department of Public Welfare and the administrative office of the Department in the State Office Building. The Purchasing Department is, however, an agency created by the State to handle its great volume of purchases, and I cannot conceive that a proportionate part of its expense of operation can properly be allocated to the several feeble-minded institutions in determining the cost of support of their patients. The adminstrative expense is more difficult to eliminate. It may well be that the difference between a clerk at the Columbus Institution and at the departmental office in the State Office Building is a difference more of degree than of kind, but it is an essential difference nevertheless. For our purposes the independence of the institutions and their patients from the central office is more significant than their inter-relationship. The inquiry of counsel as to whether the governor's

salary was included since he was the superior of the Director of Public Welfare while, of course, an attempt at "reductio absurdum" is not without merit as a caution that logic must at times be tempered with reason if an illogical result is not to be reached.

This brings us to Basis No. (1). Frankly, I find it more difficult to exclude this than Bases No. (3) and No. (4). The only essential difference between many of the items to which exceptions are taken· and those held improper under No. (3) and No. (4) is their length of useful life. Thus, capital equipment is a boiler which has quite· long usefulness, while office equipment is a typewriter which is subject to more frequent replacement. If the cost of a building is not to be included, there is reason in the argument that building materials to keep such a building in repair are likewise not properly included. As will be seen from an examination of the items in question, some, such as educational and recreational supplies, seem rather easily reconciled with "support", while others, such as "road materials", require a rather liberal interpretation of the term.

Of the authorities cited by the county in support of Basis No. (1), Majors v County of Lewis & Clark, 60 Mont. 608, 201 p. 268 (1921), at first blush, seems to lend material support, but upon careful examination will be found to turn, rather, upon the peculiar statutory situation there involved. A territorial statute provided that the United States should pay for the support of federal prisoners plus a certain amount for "use and upkeep" of the county jail. After Montana became a state, a statute was passed providing payment for "support". In this controversy between the sheriff and county one issue was whether "support" included anything for "use and upkeep" of the jail. In·view of the above statutory history the court reached the result that it did not.

The other authorities cited. rather than supporting the propriety of Basis No. (1), tend to support Basis No. (2). The court at the end of Mitchell v Colgan, supra, indicates that it considered "maintenance" as being included in support, while "current expenses of maintenance" seems to be the test recognized by the court of Roach v Gooding, supra, in its definition of support. In fairness, however, it should perhaps be noted that "support" in these cases was of the institution, not of the inmates and students, and that this detracts somewhat from their force as authority for Basis No. (2). The case of Central State Hospital v O'Donnell, Admr., 199 Ky. 708, 281 S. W. 961, supra, is of interest in that there the statute authorizing the Board of Charities to fix the rate for "support" added that:

"Such rate shall be sufficient where possible to cover a proper proportion of the cost of maintenance and of necessary repairs and improvements."

The case indicates that a legislature may well desire to include these items in "support", but also suggests that unless specifically designated, it is arguable that they are not so included.

Of the cases cited by counsel and of those found upon independent investigation, the English case of The Queen v Gravesend, 5 El. & Bl., 459, 467 (1855) is most closely in point on the propriety of Basis No. (2) rather than Basis No. (1). The issue there was the extent of the liability of a county which had agreed with the borough to provide support and maintenance for prisoners. The court said:

"We are of the opinion that, upon reasonable construction and intendment, and upon the authority of the case of Regina v Johnson (10 A. & E. 740), the terms support and maintenance of prisoners, used in the contract, are not fulfilled by supplying them with houseroom, food, clothing, bedding and fuel, and that it does include salaries of officers and expense of repairs, etc., of the prison."

No Ohio case has been cited or found which is helpful. The Supreme Court in the Huwe case, supra, referred to the statutory provision as "requiring persons liable (or the county) to pay a portion of the expenses of the maintenance of such person". The institution, the court says, "is fostered and supported by the state", even though the persons liable or the county contribute to the inmates support. This seems to indicate faintly that the expense of operation was what the court conceived of as constituting "support", but little weight can be given the statement because the question was in no way involved.

It is apparent, therefore, that the authorities are not particularly helpful. Frequent resort is had in the cases to dictionary definitions of "support". They, too have been examined, but are helpful in sustaining the conclusion reached, rather than in reaching it. I am persuaded by the fact that I believe a fair interpretation of the statute requires the county to pay the patients' per capita share of the operating costs. The state has erected and equipped the institution. The patients go there from the county. Food, clothing, fuel, medicines, salaries for personal services, and similar costs are clearly included in the cost of support. But there is upkeep of buildings and roads, there is the necessity of new short-lived equipment—all costs that must be met if the institution is to continue to care for the patients. They, too, are fairly included within support.

I deem it somewhat significant that there are certain items of operating expense to which no objection is made for which there seems to be as much ground of objection as those attacked For example, if "educational and recreational supplies" are not part of

the "cost of support" why should "motor vehicle supplies" be? I do not mean by this that Basis No. (1) can be rejected simply because the county has not objected to as many items as it might have done, but it does seem to me to indicate the difficulties of "drawing a line" if a start is once made at withdrawing certain items from the operating expenditures.

**Is there a reasonable relationship between "Cost of Support" Basis No. (2) and $5.50 per week, and if not, what is the effect?**

On Basis No. (2) for the years from 1928 to 1938, inclusive, the average per capita cost of support per week is $3.28. The highest such costs was $3.92 in 1930, the lowest $2.69 in 1933. **It seems apparent that there is no reasonable relationship between such a cost and a flat rate of $5.50 per week.**

The purpose, of course, of the above inquiry is to determine whether §1815-2 GC, if interpreted as fixing $5.50 as **the** rate rather than as the **maximum** rate, would be constitutional under the "due process clause" of the federal constitution and the "due course of law" provision of the state constitution. The question is the same under both. (**8 O. Jur., Constitutional Law, p. 697, ¶579**). When a person is declared insane or feeble-minded, he may, in the discretion of the Probate Court, be committed to a state institution. (**§§1890-23 through-30**, formerly §§1953-59). He must go. (**§1890-38 GC**, formerly §1959). The county may be required to pay for his support there without the possible alternative of keeping him confined in a county institution. (**§1890-14 GC**). In a word, relatives or the county are without control of an insane or feeble-minded person's commitment to a **state** institution. Certainly, such being the case, the state is not free to charge the inmate, his relatives or if they are unable to pay, the county, any rate it pleases, however high. There must be some limit where due process draws the line. It would be drawn at that point where the rate could be declared purely arbitrary. In other words, due process would not invalidate a rate which exceeded the costs of support unless the excess was such as to permit a finding that the rate was purely arbitrary. As stated above, there is such a disparity between actual cost of support and the $5.50 rate that I am of the opinion that the latter, if interpreted as the rate, is arbitrary, and that the statute, so interpreted would be unconstitutional.

It should be pointed out that the mere fact that a flat rate is fixed by the statute does not **per se** make it invalid. See Huwe case, supra. "* * * the requirement that individuals liable for the support of a person committed to such institution pay **a portion of the expense of his maintenance**", which was a flat rate, is not constitutional. Moreover, a flat rate would not be invalid simply because higher than the actual cost of support. It does, however, become

invalid when no reasonable relationship exists between it and the cost of support. In this connection attention should be called to State v. Thompson, 18 P. (2d) (Wyo. 1933) which was an action by the state to recover from the estate of an insane person a charge of $25.00 per month. The statute provided:

"Paying patients * * * shall be admitted to the insane asylum, according to terms directed by the state board of charities and reform; * * * "

Testimony that many years before the board had fixed the charge of $25.00 per month and that it had not been changed was admitted over objection made on the ground that the statute contemplated that the expense of care and maintenance must be shown because it constituted the proper rate of charge. The Supreme Court held the evidence admissible on the ground that the board was given power to fix the rate and that it had done so. At first blush the case may seem to support the state's claim that a rate of $5.50 is chargeable, but obviously questions such as are involved in the case at bar were not there presented. Appropriate, however, to the constitutional point now under discussion is the court's statement:

"The record fails to show that the amount thus established was arbitrary, unreasonable, or wrongfully or mistakenly fixed."

See also: Central State Hospital v O'Donnell, Admr., supra.

Since §1815-2 GC, if interpreted as fixing $5.50 as the rate rather than as the **maximum** rate would be unconstitutional and since the statute is to be interpreted so as to be constitutional, if this is possible, I am of the opinion that under this statute, the state may charge the county the cost of support on Basis No. (2) not to exceed $5.50 per week.

I fully realize that this basis lacks the certainty of a flat formidable accounting problem. These practical considerations have influenced decisions favoring a flat charge. (See State v Thompson, supra). An improper rate does not. however. become a proper one simply because it is easier of application than that which is proper. Moreover, the difficulty of application in the case at bar should not obscure the fact that when applied currently there is no difficulty. Bills for feeble-minded are rendered the county every six months. As is readily apparent from the testimony in this case. the operating expenditures, the basis for the charge for "support", is then available and the per capita rate can be readily computed and the county billed accordingly.