No. 12171

IN THE SUPREME COURT OF THE STATE OF MONTANA

1971

---

STATE ex rel KEN NYBO,

        Petitioner,

-vs-

THE DISTRICT COURT OF THE FIRST JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF LEWIS AND CLARK, and the
HONORABLE VICTOR H. FALL, JUDGE,

        Respondents.

---

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioner:

        Kendrick Smith argued, Butte, Montana.
        Stanley M. Doyle appeared, Polson, Montana.

    For Respondents:

        Arnold H. Olsen argued, Helena, Montana.

    For Amicus Curiae:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana.

---

        Submitted:    December 21, 1971

        Decided: JAN 2 0 1972

Filed: JAN 2 0 1972

Thomas J. Kearney
               Clerk

PER CURIAM:

This is an original proceeding seeking a writ of prohibition directed to the district court of the first judicial district, Judge Fall presiding. On November 15, 1971, a petition was filed in this Court seeking to set aside an order denying a motion to quash a writ of mandate issued by Judge Fall.

Petitioner Ken Nybo had been named defendant in an application for an alternative writ of mandamus in cause No. 35351, filed October 26, 1971, in the respondent district court in Lewis and Clark County. The application for an alternative writ of mandamus was by Harry L. Billings who sought mandamus to inspect the books of one "Save Our State Committee" (hereinafter referred to as SOS), under the provisions of section 94-1431(4), R.C.M. 1947. Billings was designated plaintiff and applicant, and it it was alleged that Nybo, designated defendant, was chairman of SOS and had custody of the "books". The application alleged that Billings was an incorporator, director and secretary-treasurer of an organization called "Citizens Opposed to Sales Tax" (hereinafter referred to as COST), and thus entitled to inspect the books of SOS. It was alleged that COST and SOS were opposing organizations concerned with defeating or passing Referendum #68 at the election on November 2, 1971.

Referendum #68 was provided for by the 1971 Montana Revenue Act, whereby the legislature enacted into law a 40% income tax surtax effective on passage and approval of the Act, It then referred to the people a measure with two questions: (1) For reduction of the already imposed 40% income tax surtax to 10% and for enactment of a 2% sales and use tax; or (2) against the reduction of the 40% income tax surtax to 10% and against enactment of a 2% sales and use tax.

In other words, the legislature imposed an additional tax and gave the people a choice of continuing that tax or substituting a new one; the only apparent difference being in who would pay. It would be a gross understatement to say that such a choice would be controversial. The legislature passed along this choice to the people at a special election on November 2, 1971. The Act called this special election a "special general election".

In the district court mandamus action, the prayer for relief asked that an alternative writ of mandus be issued returnable within a very brief period, compelling defendant to open the books of SOS to inspection; that the applicant have costs and an attorney fee.

An alternative writ of mandamus was issued by the respondent court on October 26. It was returnable on October 28 at 10 a.m. It was never served on defendant Nybo.

Nonetheless, on the return day, the respondent court heard testimony by plaintiff Billings and statements by his counsel who admitted service had not been had, but asserted that defendant Nybo was "hiding out". After a brief hearing the following colloquy occurred:

> "COURT: Well, you are an officer of this Court.
> If you present that to be the fact, I will accept
> it as such. Prepare a Preemptory [sic] Writ of
> such a nature that if necessary, why the Sheriff
> may force his entry into the office and seize what-
> ever is there, and Mr. Nybo I want brought forthwith
> before this Court to explain---Was he ever served?
>
> "MR. OLSEN: No, sir, he was not, and I submit that he
> has been evading us.
>
> "COURT: Well, under the circumstances prepare an
> appropriate paper so that he will be forthwith
> brought before this court to explain his action and
> be subject to interrogation by you in open court.
> That's the way we do that."

"[T]he way we do that" became what is entitled "Peremptory Writ of Mandamus" which is in part as follows:

"THE STATE OF MONTANA to KEN NYBO, Chairman of the Save Our State Committee, Helena, Montana, Greeting:

"WHEREAS, the above entitled came on regularly for hearing on the 28th day of October, 1971, at 10:00 A.M. and,

"WHEREAS, the applicant and plaintiff, HARRY L. BILLINGS, was regularly and duly sworn and testified, and,

"WHEREAS, this court has duly found and determined that the defendant, KEN NYBO, is the Chairman of the Save Our State Committee, herein after referred to as S.O.S., an unincorporated association formed for the purpose of promoting the passage of Referendum No. 68 (the sales tax) which will appear on the ballot of the November 2, 1971, special general election, and,

"WHEREAS, this court has duly found and adjudged that the defendant, KEN NYBO, Chairman of S.O.S., has advertised urging passage of the Sales Tax Referendum and has represented the offices to be under the name of KEN NYBO, S.O.S., Helena, Montana, and that address was found to be Room 305 of the Union Bank Building, Helena, Montana, and,

"WHEREAS, this court has taken special note of Section 94-1431, Subsection (4), RCM1947: as follows,

"'(4) the books of account of every treasurer of any political party, committee, or organization, during an election campaign, shall be opened at all reasonable office hours to the inspection of the treasurer and chairman of any opposing political [party] or organization for the same electorial district; and his right of inspection may be enforced by Writ of Mandamus by any court of competent jurisdiction.'

"WHEREAS, this court has duly found and adjudged that the books of account are in the possession and under the direction of said defendant Chairman, KEN NYBO, at his offices at Helena, Montana, aforesaid, and,

"WHEREAS, this court has duly found and adjudged that the defendant, KEN NYBO, and the organization, S.O.S. Committee, have failed, refused, and neglected to open to public inspection as provided by law, and,

"WHEREAS, this court has duly found and adjudged that the organization S.O.S. Committee and the defendant, KEN NYBO, failed, refused, and neglected to open the books

to said plaintiff, HARRY L. BILLINGS, upon
regular and orderly demand therefore [sic] at the
ordinary and regular hours of business on
the 26th day of October, 1971, at Room 305,
Union Bank Building, Helena, Montana, and,

"WHEREAS, this court has duly found and
adjudged that the defendant, KEN NYBO, and the
organization, S.O.S. Committee, Helena, Montana,
have evaded the duly and regularly issued process,
namely an Alternate Writ of Mandate issued by
the above entitled court, upon the application
duly verified by the plaintiff, HARRY L. BILLINGS,

"NOW THEREFORE, this court, being willing
that speedy justice be done in this case on behalf
of him, the plaintiff and applicant, does command
you, DAVE MIDDLEMAS, Sheriff, Lewis and Clark County,
State of Montana, to forthwith seek out KEN NYBO,
Chairman S.O.S. Committee, at any place that he can
be found and bring him forthwith before the above
entitled court;

"AND, you, Sheriff Middlemas, are further
ordered and this court does command you that you
go to the office of the S.O.S. Committee at Room
305 of the Union Bank Building and there demand of
anyone present or if no one is present that you do
enter that room and that you seize the books of
account of that political committee, S.O.S. Committee
and you bring such books of account forthwith to the
above entitled court."

The foregoing rather interesting document would appear to

be a judgment, a search warrant, a warrant of arrest, a body

attachment---all without due process or any process of law;

defendant not having been served nor the court having obtained

jurisdiction over him.

On the following day, October 29, counsel for defendant

Nybo (apparently now a criminal defendant also) appeared.  On

November 1 defendant's counsel filed a motion to quash on the

grounds that the "extraordinary writ of mandate was improvidently

entered".  A brief in support of the motion was also filed.

On that same day, November 1, there appears in the court

records another transcript, wherein the motion to quash was filed

and the respondent district court summarily, without even reading

or hearing its contents, denied the motion and proceeded to allow plaintiff's counsel to cross-examine defendant Nybo and force production of the books. Counsel for Nybo made several objections, tried to offer some evidence, and asked to be heard; all in vain. He was summarily denied and the hearing terminated by the court announcing: "Court is in recess."

The foregoing shows a lack of procedural due process and a lack of fundamental fairness to the extent that the entire matter is void. But, it did not even stop there! On November 5, the same district judge awarded costs, as well as attorney fees in the amount of $500, against Nybo. It is patently obvious that such costs and attorney fees awarded as a result of a void proceeding cannot stand.

However, the instant petition for a writ of prohibition goes further. It seeks, in effect, a ruling not only that the proceedings were void, but that they were void because the organization SOS is not within the purview of section 94-1431(4), R.C.M. 1947. In this regard petitioner asserts that SOS was a bipartisan organization to promote passage of Referendum #68 and thus was legislative in nature and not political within the sense and meaning of section 94-1431(4), R.C.M. 1947.

Petitioner further alleges the respondent district court's denial of the motion to quash may have been a determination which would render petitioner and members and contributors to SOS liable to prosecution under the provisions of section 94-1469 or section 94-1470, R.C.M. 1947, both of which contain criminal sanctions.

This Court issued an order to show cause requiring the district court to quash the writ previously granted therein, or appear to show cause why it was not done. The Court also ordered copies of the papers served on the Attorney General. The Amicus

Curiae brief of the Attorney General takes no position on the issue of whether the organization SOS is a "political" organization subject to the so-called Corrupt Practices Act. The Attorney General does, however, urge this Court to decide the question.

In response to our order to show cause, the respondent district court appeared by answer essentially asserting that since the records of SOS were inspected, the matter is moot. Further, it did not intend to make any holding to indicate whether or not SOS and its contributors were in violation of the Corrupt Practices Act.

As to this phase of the instant petition, we have examined the Corrupt Practices Act, particularly as to section 94-1444, R.C.M. 1947, which contains a prohibition against corporations paying or contributing "in order to aid or promote the interests, success, or defeat of any political party or organization."

A referendum measure of the legislature is not such as would be classed as the "interests, success, or defeat of any political party or organization"; unless, the legislature classes itself as a "political party or organization"---which it is not, in the sense of the terms used.

This Court has long held that a referendum is entirely "legislative" in character. State ex rel. Hay v. Alderson, 49 Mont. 387, 407, 142 P.210; Fitzpatrick v. State Board of Examiners, 105 Mont. 234, 240, 70 P.2d 285. When the legislature refers a measure to the people, it is seeking the people's voice singly and collectively, by individuals or groups. For instance, labor unions, league of women voters, chambers of commerce, newspaper editors and reporters all may have views and cannot constitutionally be restricted from expressing their views.

In the context of the Corrupt Practices Act, section 94-1444, R. C.M. 1947, the words "political party or organization" do not include the legislature's own processes nor such groups.

The Ohio Supreme Court in 1959, considered this matter in a similar situation concerning a tax levy. State ex rel. Corrigan v. Cleveland-Cliffs Iron Co., 169 Ohio St. 42, 157 N.E.2d 331,333, 336, involved an action in quo warranto to determine the legality of a corporation's contributions to a committee organized to promote the adoption of certain issues which were submitted to the voters at a general election.

The statute involved, section 3599.03, Ohio Revised Code, provided in part pertinent to this action:

> "(A)  No corporation engaged in business in this state shall, directly or indirectly, pay, use, offer, advise, consent, or agree to pay or use the corporation's money or property [a] _for or in aid of a political party, committee or organization * * *._"
> (Emphasis supplied)

In consideration of the issue, the Ohio court stated:

> "It is obvious that, in the above-quoted * * * portion of the statute appearing after [a], the word 'political' modifies not only 'party' but also the words 'committee, or organization.'  The words 'political party' have a well understood ordinary meaning.  Those words describe an association of individuals whose primary purposes are to promote or accomplish elections or appointments to public offices, positions or jobs. Although the word 'political' may have a very broad meanding, its meaning may be considerably narrowed where it is thus used to modify the word 'party.'  See Heidtman v. City of Shaker Heights, 163 Ohio St. 109, 126 N.E.2d 138. Obviously, in referring to 'a political party, committee, or organization' in this statute, the General Assembly intended by the words 'committee, or organization; to refer only to a committee or organization which is an adjunct of a political party or an association formed for substantially the same purposes or performing substantially the same functions as a political party."

The Ohio court then concluded:

> "Our conclusion is that respondent corporation could lawfully contribute to a committee organized and conducted merely for the purposes of advocating the adoption of a constitutional amendment and the passage or bond issues _and tax levies._"  (Emphasis supplied)

We find then that the Corrupt Practices Act does not cover the situation here and no further discussion is necessary.

By what we have said heretofore, we hold that the orders of the district court referred to are set aside and the entire matter dismissed, with each party to pay its own costs.