C & C PLYWOOD CORPORATION, an Oregon Corporation, Butte Chamber of Commerce, a Montana Corporation, Conrad National Bank of Kalispell, a National Bank, F. H. Stoltz Land and Lumber Co., a Montana Corporation, Kalispell Chamber of Commerce, a Montana Corporation, Montana Associated Utilities, Inc., a Montana Corporation, Montana Chamber of Commerce, a Montana Corporation, Montana-Dakota Utilities Co., a Delaware Corporation, Montana Hardware and Implement Association, a Montana Corporation, Montana Transport Association, a Montana Corporation, Montana Power Company, a Montana Corporation, Montana Stockgrowers Association, Incorporated, a Montana Corporation, Montana Taxpayers Association, a Montana Corporation, Montana Woolgrowers Association, a Montana Corporation, Mountain States Telephone and Telegraph, a Colorado Corporation, Pacific Power & Light, a Maine Corporation, Sieben Ranch Company, Inc., a Montana Corporation, Plaintiffs-Appellees,

v.

John N. HANSON, Commissioner of Campaign Finances and Practices of the State of Montana, Defendant-Appellant,

and

The Anaconda Company, a Montana Corporation, Amicus Curiae.

No. 76–3118.

United States Court of Appeals, Ninth Circuit.

Oct. 3, 1978.

Leo C. Graybill, Jr. (argued), of Graybill, Ostrem, Warner & Crotty, Great Falls, Mont., for defendant-appellant.

Patrick F. Hooks (argued), of Hooks & Sherlock, Townsend, Mont., David J. Wing (argued), of Poore, McKenzie, Roth, Robischon & Robinson, Butte, Mont., for plaintiffs-appellees.

Before WRIGHT, GOODWIN and ANDERSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

In this appeal by the Montana Commissioner of Campaign Financing and Practices, we affirm the judgment of the district court which held unconstitutional a state statute forbidding corporations or banks from making contributions to promote or defeat any ballot issue.

The action by the plaintiff corporations attacks only the constitutionality of the 1975 addition of the words "or ballot issue" to Mont.Rev.Code § 23–4744 (1947). The 1975 amendment legislatively overruled *State ex rel. Nybo v. District Court*, 158 Mont. 429, 492 P.2d 1395 (1972), in which the state supreme court held that prohibi-

tions against corporate campaign activities did not apply to ballot issues.[1]

In July 1976, the Montana Secretary of State certified an Initiative Proposal known as the "Nuclear Facility Siting Act," to be placed on the November 1976 ballot. The appellee corporations[2] asserted that they sought to participate in the campaign involving the initiative and were prohibited from doing so by the statute. They filed an original proceeding in the Supreme Court of Montana seeking declaratory and injunctive relief, complaining that the amendment was unconstitutional.

The Montana Supreme Court accepted jurisdiction and, after the matter was set for hearing, the Commissioner petitioned for removal to federal court. Because the action arose under the Constitution and, consequently, was within the original jurisdiction of the federal court, removal was granted pursuant to 28 U.S.C. § 1441.

No evidentiary hearing was held and, after filing of briefs and oral argument, the district court declared the amendment to § 23–4744 unconstitutional.[3]

1. *Standing.*

The appellant originally argued that the appellees lacked standing because, as corporations, they had no First Amendment rights of their own to assert, nor could they assert the First Amendment rights of their shareholders or of the general public. A similar contention was disposed of in *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978).

In *Bellotti*, the Supreme Court held that corporations may assert some First Amendment rights on their own behalf. The prop-

er focus, according to the Court, was not the source of the speech which a state seeks to regulate, but whether the speech itself merits First Amendment protection. 98 S.Ct. at 1415. The Court concluded that speech relating to governmental issues is "at the heart of the First Amendment's protection." *Id.*

Addressing the justiciability of the issue rather than the question of standing, the Commissioner conceded that, in light of *Bellotti*, the issue was not moot even though the election had already been held. This case, like *Bellotti*, is among those "capable of repetition, yet evading review." The process of completing judicial review will almost always consume more time than the process of voting upon a ballot measure and the measure, like that in *Bellotti*, is likely to be resubmitted to the electorate. *Id.* at 1414–15.

2. *Constitutionality.*

In *Bellotti*, the Court found unconstitutional a Massachusetts statute making it unlawful for a corporation to "directly or indirectly give, pay, expend or contribute . . . any money or other valuable thing for the purpose of . . . influencing or affecting the vote on any question submitted to the voters, other than one materially affecting any of the property, business or assets of the corporation." 98 S.Ct. at 1411–12 n. 2. The statute also stated conclusively that no question concerning taxation would be deemed materially to affect a corporation's property.

The Court held that:

(1) speech which is protected under the First Amendment does not lose its protec-

---

1. The pertinent part of § 23–4744 R.C.M., with the 1975 Amendment emphasized, reads:

     No corporation, bank, [utility company, etc.] . . . shall pay or contribute in order to aid, promote, or prevent the nomination or election of any person, or in order to aid or promote the interests, success, or defeat of any political party, organization, *or ballot issue.* No person shall solicit or receive such payment or contribution from such corporation.

2. *The district court found that only the power company plaintiffs had a sufficient "personal stake" in the nuclear initiative campaign. However, he concluded that there was "insufficient evidence" on which to be "able to say with certainty that some of the plaintiffs lack standing."*

     *Since the plaintiffs sought declaratory relief, the specific interest of a corporation in the initiative was not necessarily determinative.*

3. Appellees withdrew the request for injunctive relief.

tion because it comes from a corporate source, and a corporation need not demonstrate that a ballot measure will have a material effect on its business in order to express its views;

(2) given the facts presented, the governmental interest in preserving the integrity of the electoral process by preventing undue corporate influence and potential corruption did not justify infringement of a corporation's right to express its views and the public's right to free dissemination of information; and

(3) similarly, the protection of minority dissenting shareholders did not constitute a sufficient state interest to justify abridgment of a corporation's First Amendment rights.

The Commissioner contends that *Bellotti* is inapplicable because the Montana statute regulates a narrower range of activities than did the Massachusetts statute at issue in *Bellotti.*[4] While the Massachusetts statute forbade a corporation to "directly or indirectly give, pay, expend or contribute," the Montana statute proscribes a corporation's right "to pay or contribute." Relying upon statutory construction and *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1975), the Commissioner argues that § 23–4744 proscribes only corporate contributions, not direct expenditures, and therefore does not offend against the First Amendment.

■ The Commissioner's assertion that the statutes are distinguishable is unpersuasive. As a matter of construction, the common sense meaning of "pay" at least overlaps that of "expend" and appears to include "direct speech" such as payments to newspapers for political advertisements as well as payments to political committees and similar organizations.[5]

Furthermore, the Commissioner's reliance on *Buckley* is misplaced. In *Buckley,* the Court held that the provisions of the Federal Election Act of 1972, 2 U.S.C. §§ 431 *et seq.,* which limited expenditures that could be made by noncandidates "relative to a clearly identified candidate," 18 U.S.C. § 608(e)(1) (Supp. IV 1974), or by the candidate himself, 18 U.S.C. § 608(a)(1) (Supp. IV 1974), were unconstitutional under the First Amendment as direct restraints on political communication.

The Court went on to hold that regulating the amount that one may contribute to a candidate or campaign organization is constitutionally permissible because it allows symbolic expression of support and only marginally infringes First Amendment rights. The governmental interest in preventing corruption, also raised by the Commissioner here, was deemed sufficient to justify limitations on contributions but insufficient to permit regulation of expenditures.

As noted in *Bellotti, Buckley* was concerned with the regulation of contributions and expenditures in partisan election campaigns, 98 S.Ct. at 1422 n. 26. In contrast, the statute here, as in *Bellotti,* applies to nonpartisan campaigns regarding ballot issues. Although the relevant statute in *Bellotti* forbade both contributions and expenditures by corporations, the Court did not distinguish between the two activities in deciding that the statute was unconstitu-

---

4. The scope of the political contests to which the prohibition in § 23–4744 applies is broader than that of the Massachusetts statute in *Bellotti.* That statute permitted payment or expenditure by corporation when the ballot issue materially affected their business, except for questions relating to taxation. In contrast, the Montana statute contains no exception to the general prohibition against any corporate payment or contribution related to any ballot issue.

5. The definitions of "contribution" and "expenditure" contained in Mont.Rev.Code § 23–

4777 (1975) each include the word "payment." The original statute containing definitions, enacted at the same time as the original version of § 23–4744, treated "expend" and "pay" essentially as synonyms. Former § 94–1429 R.C.M. (1921). The semantic distinction is far from as clear as the Commissioner urges. We need not wrestle with definitions of the terms, however, because *Bellotti* establishes that the prohibitions are unconstitutional whether applied to contributions or expenditures.

tional. It did, however, draw a clear distinction between ballot issues and partisan elections. The Court pointed out that the purpose of the Federal Corrupt Practices Act, 2 U.S.C. § 441b, was to prevent corruption of elected officials by limiting their ability to incur political debts, but noted:

> [t]he case before us presents no comparable problem, and our consideration of a corporation's right to speak on issues of general public interest implies no comparable right in the quite different context of participation in a political campaign for election to public office.

*Bellotti*, 98 S.Ct. at 1422 n. 26.

█ The corporations' rights to express their views on "issues of general public interest" may not be abridged by the state unless a compelling state interest is shown. *Bellotti*, 98 S.Ct. 1420–21. The state interest in preventing corruption of officials, which provided the basis for the Supreme Court's finding in *Buckley* that restrictions could permissibly be placed on contributions, is not at issue here. When corporations seek to influence the electorate and not an individual candidate or party, no such state interest exists because corporate activities cannot create political debts of the kind contemplated in *Buckley*. *See Schwartz v. Romnes*, 495 F.2d 844, 851–53 (2d Cir. 1974).

█ That a corporation's involvement may influence the vote provides no adequate reason to suppress corporate speech. The Commissioner has not asserted a state interest sufficiently compelling to permit the abridgment of First Amendment rights caused by the prohibitions of § 23–4744.

The Commissioner also contends, however, that by prohibiting contributions while permitting expenditures, the statute promotes the state's valid interest in insuring disclosure of the corporate source of political communications. Requiring disclo-

**6.** The subject matter of these statutes was covered by Mont.Rev.Code §§ 23–4752, 4754 (1975), repealed in 1977.

**7.** Under § 23–4777, "political committee" is defined as "a combination of two or more indi-

sure of the sources of contributions was approved in *Buckley*, 424 U.S. at 66–68, 96 S.Ct. 612, as the least intrusive means of curbing potential corruption. In *Bellotti*, the Court, after stating that corporate advertisements may be highly visible in a campaign, noted that

> [i]dentification of the source of advertising may be required as a means of disclosure, so that the people will be able to evaluate the arguments to which they are being subjected.

98 S.Ct. at 1424 n. 32.

The Montana statute goes far beyond the disclosure requirements approved in *Buckley* and *Bellotti*. The state's statutes provide for disclosure of the source of paid political newspaper and periodical advertising and of pamphlets, circulars, and similar materials. Mont.Rev.Code §§ 23–47–132, 133 (1977).[6] Additionally, under §§ 23–4778 and 4779, the contributions to and expenditures by a "political committee"[7] must be reported both prior to and after the election.

█ Section 23–4744, however, totally prohibits *any* contributions or payments. It is not minimally regulatory but totally prescriptive and therefore overbroad. Under *Bellotti* such blanket infringements of First Amendment rights cannot stand.

### 3. *Conclusion.*

█ The portion of § 23–4744 R.C.M. (1975) which forbids payments or contributions by corporations in support of or opposition to ballot issues is an unconstitutional restriction of corporate First Amendment rights. While regulations to insure disclosure of the source of payments or contributions may be enacted, without a showing of a compelling state interest, the complete suppression of expression created by the Montana statute is overbroad and impermissible.

viduals, or a person other than an individual, the primary or incidental purpose of which is to support or oppose a candidate or issue or to influence the result of an election by any expenditure." Mont.Rev.Code § 23–4777 (1975).

The judgment of the district court is affirmed.