Kenneth P. JACOBUS; Kenneth P. Jacobus, P.C.; Wayne Anthony Ross; Ross & Miner, P.C.; and Scott A. Kohlhaas, Plaintiffs,

v.

State of ALASKA; and State of Alaska, Alaska Public Offices Commission, Defendants.

No. A97–0272 CV (JKS).

United States District Court, D. Alaska.

June 6, 2001.

---

## ORDER

SINGLETON, District Judge.

### INTRODUCTION

Presently before the Court is a motion filed by Plaintiffs to amend and/or clarify that portion of the judgment issued by the Court at Docket No. 45 which addresses AS 15.13.074(f). *See* Docket Nos. 46 (Mot.); 52 (Opp'n); 55 (Reply). Defendants have requested oral argument on the motion. *See* Docket No. 53.[1]

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are lawyers who regularly contribute their services *pro bono* to those political parties with views and programs they endorse. In May of 1996, the Alaska Legislature enacted 48 SLA 1996 (the "Act"), which addresses election campaigns, campaign financing, and related topics. *See* 48 SLA 1996. The Act, which became effective on January 1, 1997, defines "contributions" to political parties and, in addition to imposing other restric-

tions, limits contributions to political parties to $5,000 per individual per year and prohibits certain contributions to parties by corporations and other entities.[2] It appears that in the ordinary course of business Plaintiffs have made contributions to and incurred expenses on behalf of the parties of their choice in excess of the Act's $5,000 per person limit. They expect to continue this practice. Plaintiffs therefore brought this action arguing that attempts to limit the donation of their professional services to the parties of their choice infringes their rights under the United States Constitution. They sought a construction of the Act that would exempt from its coverage the kinds of contributions they wish to make.

This Court stayed all proceedings in this action pending construction of the statute at issue by the courts of the State of Alaska. *See* Docket No. 17. On April 16, 1999, the Alaska Supreme Court issued a decision affirming in part and reversing in part Judge Wolverton's decision, and on February 22, 2000, the United States Supreme Court denied a petition for a *writ of certiorari* filed by the Alaska Civil Liberties Union. *See State v. Alaska Civil Liberties Union*, 978 P.2d 597 (Alaska 1999) ("*AkCLU*"), *cert. denied*, 528 U.S. 1153, 120 S.Ct. 1156, 145 L.Ed.2d 1069 (2000). On April 10, 2001, this Court granted Plaintiffs' motion for summary judgment stating that "if used for non-candidate nominating or electing purposes, donations to a political party cannot constitutionally be restricted; the restriction on donating volunteer professional services is unconstitutional; and the prohibition on corpora-

---

1. Whether to hear oral argument lies within the discretion of the trial court. *See* D.Ak.LR 7.1(i); *United States v. Cheely*, 814 F.Supp. 1430, 1436 n. 4 (D.Alaska 1992), *aff'd*, 36 F.3d 1439 (9th Cir.1994). As the parties have thoroughly briefed the issues before the Court, oral argument is not necessary.

2. Contributions include, but are not limited to, financial contributions and personal services of certain types, including legal services provided by certain classes of donors.

tions, including professional corporations, providing contributions is constitutional." *See* Docket No. 44 at 16. This Court has jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. § 1331.

## DISCUSSION

### I. AS 15.13.074(f)

■ Corporations have First Amendment rights. *See First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 777, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978); *C & C Plywood Corp. v. Hanson*, 583 F.2d 421, 425 (9th Cir.1978). Just like an individual's First Amendment free speech and association rights, these rights may be limited only when there are constitutionally permissible grounds for doing so. *See Buckley v. Valeo*, 424 U.S. 1, 25–29, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); *AkCLU*, 978 P.2d at 614, 625, 634; *Pac. Gas & Elec. Co. v. City of Berkeley*, 60 Cal.App.3d 123, 131 Cal.Rptr. 350, 353 (1976).

AS 15.13.074(f) states that "[a] corporation, company, partnership, firm, association, organization, business trust or surety, labor union, or publicly funded entity that does not satisfy the definition of group in AS 15.13.400 may not make a contribution to a candidate or group." *See* AS 15.13.074(f). To the extent that a political party is a group, *see* AS 15.13.400(5), a corporation may be prohibited from making a contribution to a political party for the purpose of nominating or electing a candidate. The United States Supreme Court and the Alaska Supreme Court have both determined that such restrictions on corporate contributions are permissible. *See Fed. Election Comm'n v. Mass. Citizens For Life, Inc.*, 479 U.S. 238, 259–60, 107 S.Ct. 616, 93 L.Ed.2d 539 (1986); *Buckley*, 424 U.S. at 25–29, 96 S.Ct. 612; *AkCLU*, 978 P.2d at 614, 625, 634.

■ The parties disagree with regard to whether a corporation may contribute to a political party for a purpose other than nominating or electing a candidate (*i.e.*, for constitutionally protected purposes such as issue advocacy). *See* Docket Nos. 46; 52. Defendants argue that corporations are barred from contributing to political parties for the purpose of nominating or electing a candidate and for purposes other than nominating or electing a candidate. *See* Docket No. 52 (citing *Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990); *Fed. Election Comm'n v. Nat'l Right to Work Comm.*, 459 U.S. 197, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982); *Cal. Med. Ass'n v. Fed. Election Comm'n*, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567 (1981)). Defendants' argument is not persuasive.

> [I]n *Austin v. Michigan Chamber of Commerce*, the Supreme Court upheld the application of a state corporate campaign expenditure ban to a nonprofit corporation. Its rationale—that corporations' "unique state-conferred corporate structure that facilitates the amassing of large treasuries" poses a danger of corruption—announced a second model for potential political corruption which justifies regulation of political speech.

*AkCLU*, 978 P.2d at 606 (quoting *Austin*, 494 U.S. at 660, 110 S.Ct. 1391).

> In [*Federal Election Commission v. National Right to Work Committee* ], the Court upheld a statute barring contributions or expenditures by corporations, labor unions, and national banks in connection with federal elections, in part because it protected individuals who have paid money into the entity for purposes "other than the support of candidates from having that money used to support political candidates to whom they may be opposed."

*Id.* at 612–13 (quoting *Nat'l Right to Work Comm.*, 459 U.S. at 208, 103 S.Ct. 552). Additionally, *California Medical Association v. Federal Election Commission*, 453 U.S. 182, 101 S.Ct. 2712, 69 L.Ed.2d 567

(1981) addressed "whether provisions of the Federal Election Campaign Act of 1971 ... limiting the amount an unincorporated association may contribute to a multicandidate political committee violate[d] the First Amendment or the equal protection component of the Fifth Amendment," and concluded that the limits were constitutional. *See Cal.Med.*, 453 U.S. at 184, 101 S.Ct. 2712.[3]

Thus, as *Austin* dealt with corporate expenditures for candidate campaigns, the restrictions in *National Right to Work Committee* involved contributions and expenditures in connection with federal elections, and *California Medical* addressed multicandidate political committees which were conduits for contributions to candidates, the cases do not directly bear on the issue before the Court, which is the constitutionality of contributions by corporations to political parties for purposes other than nominating or electing candidates (*i.e.*, soft money purposes).[4] Defendants concede that the various cases it analyzes apply to

---

**3.** The *California Medical* case is distinguishable from the situation before the Court.

> As the Court's plurality opinion reveals, [*California Medical*] is distinguishable because multicandidate political committees by definition are distinct legal entities which receive funds from at least 50 contributors and make contributions to at least 5 candidates. The Court clearly related the limitation on contributions to multicandidate political committees to direct contributions to candidates (which may constitutionally be limited) in light of the candidacy of particular candidates, and noted that individuals and associations could evade the limit on contributions to candidates if they could give unlimited amounts to multicandidate political committees. Focusing the Court's holding, the concurring opinion stressed that by definition multi-candidate political committees are essentially conduits for contributions to candidates, and thus are contributions which accordingly pose the same threat of corruption as direct contributions.
>
> When a political party makes expenditures for issue advocacy the threat of corruption posed by direct contributions to candidates is absent. By the same token, use of contributions for issue advocacy does not circumvent constitutional limitations on contributions to candidates.

*Wash. State Republican Party v. Wash. State Public Disclosure Comm'n*, 141 Wash.2d 245, 4 P.3d 808, 825–26 (2000) (internal citations omitted).

**4.** *California Medical* also analyzed contributions for administrative support. *See Cal. Med.*, 453 U.S. at 198 n. 19, 101 S.Ct. 2712. The Supreme Court stated that

contributions for administrative support clearly fall within the sorts of donations limited by § 441a(a)(1)(C). Appellants contend, however, that because these contributions are earmarked for administrative support, they lack any potential for corrupting the political process. We disagree. If unlimited contributions for administrative support are permissible, individuals and groups like CMA could completely dominate the operations and contribution policies of independent political committees such as CALPAC. Moreover, if an individual or association was permitted to fund the entire operation of a political committee, all moneys solicited by that committee could be converted into contributions, the use of which might well be dictated by the committee's main supporter. In this manner, political committees would be able to influence the electoral process to an extent disproportionate to their public support and far greater than the individual or group that finances the committee's operations would be able to do acting alone. In so doing, they could corrupt the political process in a manner that Congress, through its contribution restrictions, has sought to prohibit. We therefore conclude that § 441a(a)(1)(C) applies equally to all forms of contributions specified in § 431(8)(A), and assess appellants' constitutional claims from that perspective.

*See Cal.Med.*, 453 U.S. at 198 n. 19, 101 S.Ct. 2712. Thus, it would similarly appear that the corporate contribution limitations of AS 15.14.074(f) are constitutional to the extent that they apply to administrative and other expenses directly related to and incurred on behalf of the political party operations pertaining to nominating and electing a candidate.

bans or limitations on corporate money for candidate nominating or electing purposes, but note that "[t]he decisions also strongly suggest that a state may properly ban corporate soft money contributions to a political party." *See* Docket No. 52 at 28. However, Defendants' suggestion does not necessarily follow.

While it is clear that corporations' unique state-conferred corporate structure poses a danger of corruption, corporations still have First Amendment rights to engage in activities in which the threat of corruption is absent such as when corporations are engaged in constitutionally protected activities (*i.e.*, soft money activities such as issue advocacy), or contributing to political parties for similar constitutionally protected activities, they are engaged in constitutionally protected activities, regardless of whether they are performed directly or via a political party. Thus, the Act's prohibitions on corporations providing contributions to a political party for the purpose of nominating or electing a candidate are constitutional. However, corporations are permitted to make contributions to a political party for purposes other than nominating or electing a candidate.

**IT IS THEREFORE ORDERED:**

The request for oral argument at **Docket No. 53 is DENIED.** The motion at **Docket No. 46** to clarify the judgment at Docket No. 45 is **GRANTED.** AS 15.13.074(f) is constitutional to the extent that it prohibits a corporation, company, partnership, firm, association, organization, business trust or surety, labor union, or publicly funded entity from making a contribution to a political party for the purpose of nominating or electing a candidate. AS 15.13.074(f) does not prohibit, and is unconstitutional to the extent that it prohibits, contributions by these entities to a political party for a purpose other than

influencing the nomination or election of a candidate.